Bell, J.
—The appellant was indicted for unlawfully buying five Shanghai chickens from a slave, the property of William H. Howard, the said chickens being of the value of. 16 each, “without the consent of the master, mistress, overseer, or employer.” The charge in the indictment is not in the precise language of the statute. There was a motion to quash the indictment, but the record discloses no action of the court upon the motion to quash. The evidence was, that the appellant purchased the chickens from the slave; that the slave took the chickens to town in a wagon, and was accompanied by a son of his master, a youth, aged about eighteen years, who knew that the slave had chickens in the wagon and was trying to sell them.
There was no proof that the chickens were of any value, nor was there any evidence introduced by the State to *167 show that the slave did not have the written consent of his master, mistress, overseer, or employer, to sell the chickens.
The defendant asked the court below to charge the jury that it was incumbent on the State to show, affimatively, that the defendant bought the chickens from the slave without the written consent of the master, mistress, overseer, or employer, and also to instruct the jury that it was incumbent on the State to prove that the articles purchased by the defendant from the slave were of some pecuniary value. Both of these instructions were refused by the court.
We decided, at the late term at Tyler, that the State, in a prosecution like the present, must prove all the facts which constitute the violation of the statute. It is no violation of law for a person to purchase from a slave an article of value. It is only when this is done without the written consent of the master, mistress, overseer, or employer of the slave from whom the purchase is made, that it amounts to a violation of law. The party accused, then, is not bound to show, as matter of defense, that the slave had written permission from a proper person to sell the article in question. The State must make out a prima facie case, before the defendant is put to his defense. As the fact that the slave had no written permission to sell is negative in its character, all that is required of the State is to make out a prima facie case, to the satisfaction of the jury; but a prima facie case is not made out by proving the purchase from the slave, for there is no presumption of law that the slave has not the proper authority to sell.
We are also of opinion, that it was incumbent on the State to prove that the articles purchased were of some pecuniary value. The indictment alleges, that the offense was committed on the 1st day of January, A. D. 1857. ' This was before the Penal Code went into operation. The old statute, which was in force on the 1st of January, A. *168 D. 1857, on the subject of trading with slaves, described the offense in question in the following words: “If any person shall buy from any slave any cotton, corn, meat, or other valuable produce, or article whatever,” &c. The Code adopts a phraseology somewhat different. The language of the Code, in describing the offense, is: “If any person shall buy from a slave any valuable produce, or other article whatever,” &c. We think that both in the old statute and in the Code, the idea .of value is kept up throughout, and applies as well to the generic term “ article,” as to the term “produce.” This being so, it follows, that the indictment must allege that the thing purchased from the slave is of some pecuniary value; and, it being necessary to allege value, it is equally necessary to prove it. For error of the court, therefore, in refusing the instructions asked by the defendant below, it not appearing in the record that the court gave any instructions to the jury, and for the refusal of the court below to grant a new trial, the judgment is reversed, and the
Cause remanded.